CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JAN 1 3 2011

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK



# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | | |
|---|---|---|
| ADAM R. AUTRY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6:10cv006 |
| | ) | |
| v. | ) | |
| | ) | By: Hon. Michael F. Urbanski |
| ANGEL M. MONTERO, et al., | ) | United States Magistrate Judge |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on the motion filed by Beaulieu Group, LLC ("Beaulieu") to intervene in this diversity personal injury case (Docket #20). Plaintiff Adam R. Autry ("Autry") opposes the motion, and defendants took no position on the issue. For the reasons set forth herein, Beaulieu's motion to intervene is **GRANTED**.

### I

Beaulieu is a Georgia based carpet manufacturer. Autry was employed by Beaulieu as a truck driver and was injured on February 8, 2008 while making a delivery in Virginia. Autry's complaint, filed in this court on February 2, 2010, alleges that defendant Angel M. Montero, while operating a tractor trailer for his employer, U.S. Xpress, negligently changed lanes on Interstate 81 in Rockbridge County, Virginia, and collided with a tractor trailer operated by Autry, causing it to overturn and injuring Autry. In his complaint, Autry seeks damages for personal injuries, including damages due to lost wages and medical bills.

As a result of this accident, Beaulieu paid Autry a total of $222,881.04 in workers' compensation benefits under the Georgia Workers' Compensation Act ("Georgia Act"). Under

Georgia law, Beaulieu has a subrogation lien for those payments, and "may intervene in any action to protect and enforce such lien." Ga. Code Ann. § 34-9-11.1(b). Beaulieu seeks to intervene in this case to protect and enforce its lien. Beaulieu argues that its motion to intervene is timely as no written discovery has been propounded, no discovery taken and no dispositive motions filed. It further contends that no other party to the litigation will adequately protect its lien and that absent intervention, its lien will be prejudicially compromised or extinguished.

Autry objects to Beaulieu's intervention in this case, arguing that Beaulieu has no subrogation lien under Virginia law because benefits were paid to him under Georgia law. Autry asserts that a subrogation lien is created in favor of an employer under the Virginia Workers' Compensation Act ("Virginia Act") only for a "claim against an employer under this title." Va. Code Ann. § 65.2-309(a). Thus, Autry claims Beaulieu cannot intervene in this action because it has no lien or subrogation rights under Virginia law to assert.

Beaulieu responds that it is immaterial that the benefits were paid to Autry under Georgia law. According to Beaulieu, Autry was eligible for benefits under Virginia law since the accident occurred in Virginia, and thus Beaulieu can assert a subrogation lien pursuant to Virginia law. Beaulieu contends that its subrogation lien is triggered by Autry's eligibility under Virginia law, regardless of whether the actual benefits he received were paid under Virginia law. In alternative, should the court find Beaulieu cannot assert a Virginia subrogation lien, Beaulieu asks the court to permit its intervention in this action to protect its Georgia subrogation lien.

## II

Intervention is governed by Federal Rule of Civil Procedure 24. Rule 24(a)(2) requires intervention as a matter of right to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as

a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Consistent with the requirements of the Rule, the Fourth Circuit has held that a person seeking to intervene "must show first, an interest sufficient to merit intervention; second, that without intervention, its interest may be impaired; and third, that the present litigants do not adequately represent its interest." Virginia v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976).

Rule 24(b)(1)(B) authorizes permissive intervention for anyone who "has a claim or defense that shares with the main action a common question of law or fact." Rule 24(b)(3) also requires the court to consider whether intervention will delay or prejudice the adjudication of the original parties' rights.

### III

The first question before the court is whether Beaulieu has an interest sufficient to merit intervention as a matter of right pursuant to Rule 24(a)(2). Autry argues that Beaulieu does not have a sufficient interest, because it has no subrogation lien to enforce under Virginia law. Beaulieu, on the other hand, contends that Autry's eligibility for benefits under Virginia law creates a Virginia subrogation lien. As set forth in detail below, the undersigned agrees that Beaulieu has no subrogation lien arising under Virginia law. Nevertheless, the court finds that the first requirement for intervention has been satisfied, as Beaulieu's Georgia lien gives it a sufficient interest to merit intervention pursuant to Rule 24(a)(2).

### A.

It is undisputed that Autry was eligible for workers' compensation benefits under both Virginia and Georgia law. Autry is a Georgia resident employed by Beaulieu, a Georgia corporation, rendering him eligible to receive benefits under the Georgia Act. Because the

workplace accident occurred in Virginia, Autry was also eligible to receive benefits under Virginia law.

Beaulieu argues that this eligibility alone creates a subrogation lien under Virginia law. The court cannot agree. The language of the Virginia Act plainly provides that a subrogation lien in favor of the employer arises from "a claim against an employer under this title." Va. Code Ann. § 65.2-309. While Autry was eligible for benefits under the Virginia Act, he made no such claim under Virginia law, and Beaulieu made no payments under the Virginia Act. Having made no payments under the Virginia Act, Beaulieu has no Virginia lien.

Beaulieu founds its argument on two decisions by district courts in the Fourth Circuit, neither of which addresses the specific question presented here. Beaulieu relies first on McCann v. Newport News Shipbuilding and Dry Dock Co., 177 F. Supp. 909 (E.D. Va. 1959), in which plaintiff, a New Jersey resident employed by Ingersoll Rand Co., was injured while on the job at the Newport News shipyard. McCann filed a claim for and received workers' compensation benefits under New Jersey law. Id. at 911. As such, the issue facing the court was whether McCann could maintain an action against the shipyard in Virginia. The court concluded that McCann's suit against the shipyard was barred under Virginia law because plaintiff had a right to compensation as a statutory employee of the shipyard. Id. at 913. Reasoning that "Virginia intended to grant such remedies to, and impose such restrictions and limitations upon, such non-residents to the same extent as though they were residents and employed by a Virginia employer," id. at 913, the court held that plaintiff's sole remedy was via workers' compensation.

Beaulieu also relies on Wilson v. Fraser, 353 F. Supp. 1 (D. Md. 1973). In Fraser, two employees of Sears, Roebuck & Company were killed on a highway in Virginia while driving back to their office in Maryland after a sales promotion dinner. 353 F. Supp. at 2. The estates of

both employees obtained workers' compensation benefits under Maryland law. Id. at 3. The administratrix of the estate of the passenger in the fatal crash then filed suit for wrongful death against the executrix of the estate of the driver. Id. at 3. Applying Virginia law, the court found that plaintiff's claim was statutorily barred because worker's compensation benefits were the exclusive remedy in Virginia when injuries resulted from a fellow employee. Id. at 3, 6. The court did not find the payment of Maryland benefits determinative, noting that "it is eligibility for benefits under the workmen's compensation laws of Virginia, not whether a claim for benefits was actually made or received, which determines whether a bar to a common law action exists." Id. at 4-5. The court reasoned that plaintiff had been eligible for benefits under the Virginia Act, relying on McCann for the proposition that "Virginia will extend its workmen's compensation coverage to employees temporarily within the state in the course of their employment." Id. at 5. Because plaintiff had been eligible to receive workers' compensation benefits under the Virginia Act, the exclusive remedy provision of the Virginia Act served to bar plaintiff's tort action against a fellow servant even though plaintiff had not received any Virginia workers' compensation benefits.

From these holdings, Beaulieu concludes that Autry's eligibility for Virginia benefits triggers the creation of a Virginia subrogation lien, thus it is immaterial that Autry did not receive any benefits under the Virginia Act. Beaulieu's argument misapprehends the holdings in McCann and Fraser and ignores the express statutory language of the Virginia Act.

First, McCann and Fraser do not hold that a subrogation lien is created under Virginia law absent payment of Virginia workers' compensation benefits. Rather, each case holds that nonresident employees injured in Virginia are granted the same remedies, and are subject to the same restrictions and limitations, as an injured Virginia employee. In McCann the plaintiff, who

was employed by Ingersoll-Rand of New Jersey but was working temporarily at the Newport News shipyard, could not sue the shipyard because he was covered under the Virginia Act and was barred from bringing an action in common law against his statutory employer. Likewise, in Fraser, the court held that a tort claim brought by the estate of a fellow servant was barred by the Virginia Act because the accident occurred in Virginia, even though both employees were residents of Maryland and their estates had received benefits from the Maryland Workers' Compensation Commission. As in McCann, the issue before the court in Fraser was not whether a Virginia subrogation lien was created because the accident occurred in Virginia and the injured employee was eligible under the Virginia Act. Rather, the issue was whether Virginia law applied to bar a claim related to a workplace accident occurring within its borders. As such, neither McCann nor Fraser holds, as Beaulieu argues, that a Virginia subrogation lien is created even though no benefits were paid under the Virginia Act.

Both McCann and Fraser rely on the Fourth Circuit's opinion in Home Indemnity v. Poladian, 270 F.2d 156 (4th Cir. 1959), a case which actually does involve a subrogation lien. In Poladian, a resident of the District of Columbia employed by a D.C. cement subcontractor was injured while working at a construction project in Virginia. The employee accepted an award of workers' compensation benefits in the District, and the comp carrier, Home Indemnity, brought an action, both for itself and in the name of the injured employee, against Poladian, the Virginia general contractor responsible for the construction project. Home Indemnity's action sought recovery of the monies Home Indemnity paid the employee under the District's workers' compensation scheme and for damages to the employee in excess of that amount. The issue in the case was whether the law of Virginia or the District of Columbia controlled, the difference being that while the District allowed a suit against a general contractor, Virginia did not. Home

Indemnity argued that because it paid benefits under District of Columbia law, the District's law governed the question of the Virginia contractor's liability. The Fourth Circuit disagreed, reasoning as follows:

> We find no support in the authorities for this proposition. It is equally without support in logic. No reason occurs to us for saying that when action against a general contractor by a subcontractor's injured employee is barred by the law of the state where the injury occurred, the employee may at his option remove the bar by accepting an award of compensation from the subcontractor in another state. **The relationship between the workman and his immediate employer may in respect to rights inter sese be governed by the state where they reside and where compensation has been provided and paid,** but the general contractor, residing and operating in another state, is ordinarily governed by the laws of that state. He remains subject to the obligations of these laws and is entitled to the benefits that accrue to him from compliance.

270 F.2d at 159-60 (emphasis added). Although dicta, the highlighted passage suggests the proper resolution of the issue presented here, i.e., that the relationship between the workman, Autry, and his immediate employer, Beaulieu, may in respect to rights between them be governed by the state where compensation has been provided and paid, Georgia. As such, Beaulieu's lien arises under Georgia, and not Virginia, law.

Such a conclusion is consistent with the plain language of the Virginia Act, which creates a lien in favor of the employer for a "claim against an employer **under this title** for injury." Va. Code Ann. §§ 65.2-309, 65.2-309.1 (emphasis added); see also Va. Code Ann. § 65.2-310 (requiring court after notice to deduct the amount of compensation "incurred by the employer **under the provisions of this title**" from a judgment by employee against a thirty party (emphasis added)).

Beaulieu's argument also is undermined by the differences between the Virginia and Georgia workers' compensation schemes. While both the Virginia and Georgia Acts create a

subrogation lien in the favor of an employer paying compensation to an injured employee, the subrogation rights afforded under each Act are different. See Tyson Foods, Inc. v. Craig, 266 Ga. App. 443, 444, 597 S.E.2d 520, 521 (2004). Under Virginia law, an employer is subrogated to the extent of its workers' compensation payments to its employee. Va. Code Ann. § 65.2-309. "The purpose of that statute is clearly to reimburse an employer who is compelled to pay compensation as a result of the negligence of a third party and to prevent an employee from obtaining a double recovery of funds already paid to him by his employer." Gartman v. Allied Towing Corp., 467 F. Supp. 439, 440 (E.D. Va. 1979). As the Georgia Court of Appeals noted in Tyson Foods, Georgia law takes a different approach:

> Only if the injured worker has been fully and completely compensated for his injuries may the employer or the employer's insurer enforce a subrogation lien on the injured employee's recovery in a third-party action. That the injured party be fully compensated is a matter of Georgia public policy.

266 Ga. App. at 444, 597 S.E.2d at 521 (internal citations omitted).

The subrogation lien resulting from an employer's workers' compensation payments differ markedly under Virginia and Georgia law. In Virginia, an employer may recover the amount of workers' compensation benefits he has paid his employee from the proceeds of a judgment or settlement of a tort action against a third party, Va. Code § 65.2-310, subject to a pro rata apportionment of reasonable expenses and attorney's fees. Va. Code Ann. § 65.2-311.

Georgia law is different, and provides that an employer's workers' compensation lien "shall only be recoverable if the injured employee has been fully and completely compensated, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury." Ga. Code Ann. § 34-9-11.1(b).

8

Beaulieu made payments under the Georgia Act and is entitled to enforce its subrogation lien arising under Georgia law. Beaulieu made no payments under the Virginia Act. As such, Virginia law creates no lien in its favor. The fact that the essential nature of the subrogation liens under each state's law is so different further illuminates the error of the position taken by Beaulieu in this case that mere entitlement to Virginia workers' compensation benefits creates a lien under the Virginia Act. Georgia and Virginia laws conflict as to the character of an employer's subrogation lien. The public policy of Georgia is plainly more employee-friendly and only allows an employer to have a lien once the "injured employee has been fully and completely compensated." Ga. Code Ann. § 34-9-11.1(b). Presumably, the workers' compensation awards in each state factor in the nature of the employer's subrogation rights. It would be inequitable, as between Autry and Beaulieu, for Beaulieu to make payments under the Georgia workers' compensation scheme and to obtain a lien under Virginia law, which conceivably could be in excess of what Georgia law would allow.

### B.

Having established that employers' subrogation liens under Georgia and Virginia law are very different, and that Beaulieu is not entitled to assert a lien under Virginia law for payments it made under the Georgia Act, the next question is whether Beaulieu's Georgia lien gives it an interest sufficient to merit intervention in this action pursuant to Rule 24(a)(2).

Autry argues that Beaulieu may not intervene to protect and enforce the Georgia lien in this court, suggesting that under the principle of lex loci delicti, Virginia law precludes enforcement of the Georgia lien in this action. The court cannot agree. The Fourth Circuit has held that Virginia would not resolve conflicts of law questions involving workers' compensation

strictly on a lex loci delicti basis. Rather, the question of conflicts of laws is to be resolved based on compensation policy concerns.

To be sure, the common law of Virginia, where the accident occurred, applies as between Autry and the defendants. The law of Virginia plainly governs the question of Montero's and U.S. Xpress' liability to Autry. However, as regards Beaulieu's ability to recover from Autry payments made to Autry under the Georgia Act, the Fourth Circuit's decision in Poladian, 270 F.2d at 159-60, calls for application of Georgia law. See also Betts v. Southern Ry. Co., 71 F.2d 787, 788-790 (4th Cir. 1934).

Autry's reliance on certain Georgia decisions is unavailing. Performance Food Group, Inc. v. Williams, 300 Ga. App. 831, 686 S.E.2d 437 (2009), and Johnson v. Comcar Industries, Inc., 252 Ga. App. 625, 556 S.E.2d 148 (2001), stand for the proposition that an employer may not pursue a subrogation claim for workers' compensation benefits paid under the law of another state in a Georgia tort action where the injury occurred in Georgia. The holdings of these cases stem from the Georgia Supreme Court's decision in Sargent Industries, Inc. v. Delta Air Lines, Inc., 251 Ga. 91, 303 S.E.2d 108 (1983), in which the Georgia Supreme Court held that when "an employee who was injured in one state and eligible to obtain workers' compensation benefits in that state in fact claimed and received benefits in another state. . . . the law of the place of the tort applies." Id. at 94, 303 S.E.2d at 110 (relying on Wardell v. Richmond Screw Anchor Co., 133 Ga. App. 378, 210 S.E.2d 854 (1974)). Georgia courts have recognized that this aspect of Georgia law is not the majority rule, see Maryland Cas. Ins. Co. v. Glomski, 210 Ga. App. 759, 437 S.E.2d 616, 617 (1993), and may yield harsh results. Performance Food Group, 300 Ga. App. at 833, 686 S.E.2d at 440; see also 15 Lex K. Larson, Larson's Workers' Compensation § 144.02[3] (Rev. ed. 2010).

The Georgia minority rule has not been followed in Virginia. In fact, the Fourth Circuit has expressly declined to follow the rationale of the Georgia minority rule in a Virginia case arising out of a workplace accident, Kelly v. Guyon General Piping, Inc., 882 F.2d 108, 110-11 (4th Cir. 1989). After noting that some courts apply a strict lex loci approach to application of workers' compensation law and citing only the Georgia Supreme Court's decision in Sargent, the Fourth Circuit stated that "[b]oth as a practical matter and as a matter of principle, however, this approach has significant limitations that we believe would cause the Virginia courts to reject it." Id. at 110-11. The Fourth Circuit continued, "we believe it implicit in the Virginia decisions . . . that Virginia's choice of its own law in cases having multi-state connections where the injury occurred in Virginia is rested on compensation policy concerns rather than a mechanical application of the lex loci tort rule." Id. at 111.

Autry's argument that this court should ignore the workers' compensation lien created under Georgia law is founded on just the sort of "mechanical application of the lex loci tort rule" rejected by the Fourth Circuit in Kelly. In short, Virginia's conflict of law rules do not preclude Beaulieu's intervention to protect its Georgia lien. Thus, the court finds that Beaulieu's Georgia lien constitutes an interest sufficient to meet the first element of Rule 24(a)(2).

## IV

The next questions presented by Rule 24(a)(2) are whether Beaulieu has established that its interest in its subrogation lien may as a practical matter be impaired absent intervention, and whether Autry adequately represents its interest.

### A.

As to the latter question, it is easily determined that Autry does not represent Beaulieu's interest. Autry has taken the position in this case that Beaulieu has no enforceable lien under

Virginia law. Additionally, Autry argued at the hearing that it is a question of first impression whether Beaulieu could enforce its Georgia subrogation lien in Georgia following a settlement or judgment in this Virginia action. In response to the court's question as to whether Beaulieu could enforce its Georgia lien following a Virginia judgment, Autry's Georgia counsel responded as follows:

> That's a very interesting question, Judge, that I tried to answer earlier today both by research and talking to some folks in the field of subrogation law here in Georgia. And the answer I got was that's a matter of first impression. There's no case that we can find where there was a tort action in another state and a Georgia comp and then the employer filed a direct action in Georgia. I can't say whether it is allowed or not allowed.

October 21, 2010 Hearing Tr., Docket # 32 at 15. Also at the hearing, the court questioned counsel for Beaulieu as to why intervention was necessary, given the many cases in which workers' compensation liens are addressed in personal injury lawsuits without intervention. Counsel for Beaulieu responded as follows:

> The reason we are seeking to intervene here is because myself and counsel for Mr. Autry spent much of the summer trying to work out a recognition of the lien. And we ultimately came to an impasse. . . . [I]t is their contention that, because we did not pay benefits under the Virginia [W]orkers' [C]ompensation [A]ct, that – and the Georgia law doesn't apply here, that we are out of luck and we have to be shown the door . . .

October 21, 2010 Hearing Tr., Docket # 32 at 8.

Given Autry's position in this litigation and his reluctance to recognize Beaulieu's subrogation lien, it cannot be said that Autry adequately represents Beaulieu's interests. Plainly, Autry is not interested in accommodating Beaulieu's subrogation lien.

## B.

Rule 24(a)(2) requires that Beaulieu also demonstrate that it "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). There is little question that Beaulieu's ability to protect its interest, as a practical matter, will be impeded or impaired if intervention is denied.

Many tort claims of this sort settle prior to trial. If Beaulieu is not allowed to intervene, it will have no legally enforceable stake in the settlement negotiations, nor will it have any say in how settlement proceeds are allocated. By statute, Beaulieu's recovery is limited to "the amount of disability benefits, death benefits, and medical expenses paid under this chapter" and such amount is only recoverable once Autry "has been fully and completely compensated . . . ." Ga. Code Ann. § 34-9-11.1(b). If settlement of this tort action leaves any of Autry's damages uncompensated, Beaulieu will have no enforceable lien. Likewise, if settlement proceeds are categorized as noneconomic damages, i.e., pain and suffering, and the benefits Beaulieu paid to Autry were for his economic losses, Beaulieu's lien will be unenforceable.

Such were the facts in Canal Insurance Company v. Liberty Mutual Insurance Company, 256 Ga. App. 866, 870, 570 S.E.2d 60, 65 (2002), a case that while not completely analogous is nonetheless instructive. In Canal, Liberty Mutual, the insurer for the third party tortfeasor, settled with the injured employee for non-economic pain and suffering damages, leaving uncompensated substantial economic damages for lost wages and medical expenses. The tort case was dismissed with prejudice. Id. at 866, 570 S.E.2d at 62. Canal, the workers' compensation carrier, had been on notice of the tort action but chose not to intervene. Id. at 866, 570 S.E.2d at 62. Canal brought suit against Liberty Mutual alleging that Liberty Mutual failed to honor Canal's workers' compensation lien by settling the case with the employee. Id. at 867,

570 S.E.2d at 63. The trial court held that Canal's right of subrogation was barred, stating

"[a]bsent intervention in such tort suit to protect its subrogation right, Canal could never carry its

burden to prove that the employee had been fully compensated for his injuries and damages, thus

barring any right of subrogation." Id. at 866, 570 S.E.2d at 62. The Georgia Court of Appeals

affirmed.

Autry's Georgia counsel acknowledged at the October 21, 2010 hearing that it is unclear

whether Beaulieu would be able to enforce its lien against Autry in a Georgia court following a

Virginia judgment or settlement of the tort action. See October 21, 2010 Hearing Tr., Docket #

32 at 15. But the language employed by the court in Canal Insurance Co. suggests that

Beaulieu's lien would be unenforceable absent intervention. Indeed, if, as in Canal, Autry settles

his claim for non-economic damages only, or were the case to go to trial and the jury returned a

general verdict, Beaulieu would be unable to prove that Autry had been fully compensated for

his injuries and damages. 256 Ga. App. at 866, 570 S.E.2d at 62. Under Georgia law,

determination of whether the employee has been made whole by workers' compensation benefits

and by recovery from a third party tortfeasor is a prerequisite to enforcement of a comp carrier's

lien. Id. at 870, 570 S.E.2d at 65.

If Beaulieu is allowed to intervene in this action, the proceedings would be bifurcated, as

required by Georgia law. See id. at 870, 570 S.E.2d at 65 (holding bifurcation is appropriate to

"avoid revealing to the jury that the employee has already recovered a collateral source, the

workers' compensation benefits."); Hammond v. Lee, 244 Ga. App. 865, 536 S.E.2d 231 (2000)

(upholding trial court's decision to bifurcate the case into two phases tried before the same jury).

First, the jury would reach a verdict as between the injured employee and the third-party

tortfeasor. Hammond, 244 Ga. App. at 866, 536 S.E.2d at 233. During that phase of the

proceeding, the jury is not permitted to learn of the existence of workers' compensation payments. See id. at 866, 536 S.E.2d at 233. If the jury reaches a verdict, it indicates on a special verdict form "what recovery is returned for medical expenses, lost wages, and pain and suffering, because the subrogation cannot be satisfied out of a noneconomic recovery." Canal Ins. Co., 256 Ga. App. at 870, 570 S.E.2d at 65. Without this special verdict form, "it would be impossible to determine whether [an employee] had been fully compensated for his losses. The outcome in many situations would be that a workers' compensation subrogation lien could not be enforced." Id. at 871, 570 S.E.2d at 65 (alteration in original) (quoting North Bros. Co. v. Thomas, 236 Ga. App. 839, 841, 513 S.E.2d 251, 253 (1999)).

The question of whether an employee has been fully compensated for his loss is addressed by the trial court in the second phase of the proceeding. The trial court must determine whether "the employee has been fully and completely compensated by workers' compensation benefits and by a recovery from a third-party tortfeasor" within the meaning of Ga. Code § 34-9-11.1(b), before the employer is allowed to recover the amount of the workers' compensation benefits paid out. Canal Ins. Co., 256 Ga. App. at 870, 872, 570 S.E.2d at 65, 66. While courts have held that no party has a right to a jury determination of this issue, see Liberty Mutual Insurance Co. v. Johnson, 244 Ga. App. 338, 340, 535 S.E.2d 511, 513-14 (2000), the court can empanel an advisory jury to hear the issue of full and complete compensation and render an advisory finding of fact. Canal Ins. Co., 256 Ga. App. at 871, 570 S.E.2d at 65. If the court finds that the amount the employee recovered was sufficient to fully and completely compensate him, the employer is entitled to a subrogation lien against the economic portion of the recovery up to the total amount of the lien. Id. at 873, 570 S.E.2d at 67.

Were intervention to be denied in this case and a Virginia jury renders a general verdict in favor of Autry, Beaulieu could attempt to enforce its lien against Autry in a Georgia court. But the court is unlikely to enforce the lien, because without an allocation of economic and non-economic losses, it would be unable to determine what portion of the jury verdict was attributable to economic losses. Thus, it would be impossible to determine whether Autry was fully compensated. See Canal Ins. Co., 256 Ga. App. at 870-71, 570 S.E.2d at 65. Additionally, fact finders in two different states would be required to hear evidence and reach a determination with respect to compensation for Autry's injuries. Not only would such a process be duplicative, costly and time consuming, it could lead to inconsistent results.

Moreover, failure to allow intervention in this case would impair Beaulieu's interest from a collection standpoint. Following resolution of the Virginia tort action, Beaulieu would have no ability to prevent transfer of the settlement proceeds or monetary judgment without action of a Georgia court. Practically speaking, there is a real risk that Beaulieu's interest could dissipate if intervention is not allowed. The Georgia Act implicitly recognizes just such a concern, authorizing intervention by a Georgia employer "in any action to protect or enforce [its] lien." Ga. Code Ann. § 34-9-11.1(b).

In sum, Beaulieu has satisfied the requirements for intervention as a matter of right pursuant to Rule 24(a)(2). Not only is intervention warranted under the provisions of Rule 24, it will lead to a more efficient, just and timely resolution of this dispute. As such, an Order granting Beaulieu's petition to intervene will be entered this date.

Entered: January 13, 2011.

/s/ Michael F. Urbanski

Michael F. Urbanski
United States Magistrate Judge